IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **8:11CR342** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **FINDINGS AND** |
| | ) | |
| **MAGDA MORALES-COSIO,** | ) | **RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

    This matter is before the court on the motion of defendant Magda Morales-Cosio (Morales-Cosio) to suppress (Filing No. 15). Morales-Cosio is charged in the Indictment with the use of an identification document not lawfully issued to her on June 9, 2008, in violation of 18 U.S.C. § 1546(b) (Count I), the false claim of U.S. citizenship on June 9, 2008, in violation of 18 U.S.C. § 911 (Count II); and the false representation of a Social Security number on June 9, 2008, in violation of 42 U.S.C. § 408(a)(7)(B) (Count III).

    An evidentiary hearing was held on the motion on December 5, 2011. Morales-Cosio was present for the hearing along with her counsel, Paul J. Forney. The United States was represented by Assistant U.S. Attorney Douglas R. Semisch. Laura-Garcia Hein, a certified interpreter in the Spanish language, served as the interpreter for the hearing. The court heard the testimony of Special Agent David Gran (Agent Gran) of the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations. A transcript (TR.) of the hearing was prepared and filed on December 11, 2011 (Filing No. 24).

**FINDINGS OF FACT**

    Prior to October 4, 2011, ICE conducted an I-9 audit of the Quality Pork International (QPI) plant in Omaha, Nebraska (TR. 4-5). The I-9 audit consisted of a review of the I-9s and any documents attached supporting employees' eligibility to work in the United States along with applicable payroll records, which were submitted by QPI (TR. 5). The audit also consisted of checks with various data bases including those from the Federal Trade Commission (FTC) (TR. 5). The FTC database contains complaints by persons alleging their identities have been used by others without the complainant's permission (TR. 5-6). Following the I-9 audit, the forensic ICE auditor compiled a list of

possible identity theft suspects working at QPI and made up individual folders with pertinent documentation for ICE agents to use in a visit to the QPI plant (TR. 6). One of the names on the folders was Roxanna Castillo (TR. 7).

On October 4, 2011, around 2:00 p.m., approximately twenty ICE agents traveled to the QPI plant to interview employees suspected of identity theft (TR. 14, 17). When the agents arrived, suspected employees were assembled by management in a training room (TR. 14-15). As the name of an employee was called out, the employee who responded was met by several ICE agents for an interview (TR. 15). Agent Gran was assigned the folder of Roxanna Castillo, and as her name was called, the defendant Morales-Cosio came forward (TR. 7). Agent Gran, in Spanish, asked Morales-Cosio the three standard pre-*Miranda* questions (TR. 7). Morales-Cosio was asked what her name was, where she was born, and if she had any papers to be lawfully present in the United States (TR. 7-8). Morales-Cosio responded that her name was Morales-Cosio, she was born in Mexico, and she did not have papers for her to be in the United States (TR. 7-8). Agent Gran then placed Morales-Cosio under administrative arrest (TR. 8-9). Morales-Cosio was moved to another part of the QPI plant to await the conclusion of the interviews of other suspected employees and transportation to the ICE detention center in Omaha (TR. 8-9). No further questions were asked of Morales-Cosio at the QPI plant nor were any documents retrieved from her person or belongings (TR. 16).

Morales-Cosio was taken to the ICE detention office where she was booked and fingerprinted (TR. 8). Her name and fingerprints were checked with IDENT, ICE's automated fingerprint system, and IAFIS, the FBI's integrated automated fingerprint system (TR. 8). Morales-Cosio was then processed for immigration removal proceedings and issued notice to appear before an immigration judge (TR. 8). The IDENT system revealed Morales-Cosio had seven prior contacts and detentions by the U.S. Border Patrol with subsequent voluntary returns back to Mexico (TR. 9).

## LEGAL ANALYSIS

Morales-Cosio asserts she was subject to a custodial interrogation at QPI on October 4, 2011, without having been advised of her *Miranda* rights. Morales-Cosio seeks the suppression of all evidence obtained following such interrogation.

> 8 U.S.C. § 1357(a)(4), provides in part:
>
> § 1357. Powers of immigration officers and employees - -
> (a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant–
>
> * * *
>
> (2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States;
>
> * * *
>
> (4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, but the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States.

[8 U.S.C. § 1357(a)](.).

Morales-Cosio was arrested on immigration charges at QPI on October 4, 2011, and was placed in removal proceedings that same day. Even though Morales-Cosio was being investigated for various criminal charges, Morales-Cosio was not indicted on those charges until her Indictment on October 18, 2011 ([Filing No. 1](.)).

Morales-Cosio asserts the identity information learned from the "three questions" was illegal and any subsequent information was the fruit of the poisonous tree and inadmissible at trial. However, Morales-Cosio was not in custody for the purpose of *Miranda* warnings when she was questioned by Agent Gran. The employees gathered in the conference room were not in custody considering all the factors of ***United States v.***

*Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). Morales-Cosio was not placed in handcuffs, the agents were in civilian clothing, no firearms were brandished or displayed, and no threats or force was used by the agents. Morales-Cosio asserts the "three questions" were interrogation requiring *Miranda* warnings. The Eighth Circuit has held that routine questions for "basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating." *United States v. McLaughlin*, 77 F.2d 388, 391-92 (8th Cir. 1985); **see** *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1039 (8th Cir. 2010). Even if Morales-Cosio had been entitled to *Miranda* warnings before the "three questions," ICE would have been able to establish her identity, and the information gathered following Morales-Cosio's immigration detention would be admissible in evidence and not subject to exclusion. Morales-Cosio's motion to suppress should be denied.

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that:**

Morales-Cosio's motion to suppress (Filing No. 15) be denied.

### ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 28th day of December, 2011.

BY THE COURT:
s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.